## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 1:24-cr-108-GBW |
| | : | |
| BRANDON JONES, | : | |
| Defendant. | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The defendant, a registered sex offender, was apprehended after clicking on links to an undercover law enforcement website that promised sexually abusive images of children, leading to a search of his home, vehicle, and person, where agents found hundreds of such images in his recently-purchased cellular phone, including images depicting the sadistic abuse of children and the sexual abuse of infants. He agreed in his plea agreement not to seek a sentence of less than 60 months' incarceration, which is the effective Sentencing Guidelines range because it is the maximum possible sentence for the offense to which he has pled guilty. Accordingly, the parties are jointly recommending a sentence of 60 months' incarceration. [1]

---

[1] As it does in every case, the government will be filing a sealed Attachment A to this Sentencing Memorandum.

## I.    Factual Background

The defendant was identified when an undercover (UC) agent from Homeland Security Investigations (HSI) discovered individuals using a particular internet-based messaging and social media application ("Application A") to exchange child sexual abuse material (CSAM).  Second Revised Presentence Investigation Report, Aug. 28, 2025 (PSR) ¶ 21. Among other ways of sharing CSAM, users on Application A post URL links in the group that, when clicked on, redirect users to another, third-party website where CSAM can be viewed or downloaded.  *Id.* Users of Application A can also post CSAM images and videos into the group's chat window.  *Id.* Groups on Application A are private and cannot be found through a search; rather, users join by being added by an existing group administrator or member, or by an invitation link. *Id.* ¶ 22.

HSI established two undercover websites so that when users clicked on HSI-created links, the HSI websites received and stored non-content information such as the user's IP address, page that the user visited, and time and date of visit. *Id.* ¶ 23. As part of the investigation, HSI infiltrated

particular groups on Application A that were dedicated to posting, sharing, and downloading CSAM. *Id.* ¶ 24. In one such group, HSI posted a link to one of its undercover websites. *Id.*

On or about April 20, 2024, and again on May 24, 2024, the defendant, Brandon Jones, clicked on two of the UC links. *Id.* ¶ 25. One was titled "[Pedomom_suck_son]" and the other was titled "[Pthc_4yogirlanal]." *Id.* ("PTHC" is a common acronym among users of CSAM for "pre-teen hardcore.") The defendant's IP address was captured when he clicked on the two links, from which his physical address was determined, and was the same as that listed on the sex offender registry. *Id.* (The defendant is a registered sex offender due to a 2016 conviction for possession of child pornography, for which he received a sentence of six years' confinement, suspended to 18 months' intensive probation supervision. *Id.* ¶ 67.)

Search warrants were then executed on the defendant's residence, person, and vehicle on October 30, 2024. *Id.* ¶ 26. Agents seized a cell phone from the defendant during the search, and in the phone, agents initially discovered at least 80 CSAM files. *Id.* ¶ 27. Notably, the defendant had only purchased the phone six weeks earlier, and had smashed his old phone and thrown it in a river. *Id.* Ultimately, after submitting the

contents of the phone to the National Center for Missing and Exploited

Children (NCMEC), agents determined that it contained 336 image files

and 18 video files, including 104 known series of identified victims. *Id.* ¶ 28.

Among them are a graphic video of an adult male sexually assaulting a male

infant and ejaculating on him; and an image of a naked male child,

approximately 10 years old, bound and blindfolded, whose genitals are

wrapped in some type of electrode device. *Id.* ¶¶ 29-30.

After waiving his *Miranda* warnings, the defendant agreed to speak

with agents. *Id.* ¶ 32. He admitted that he viewed his collection of CSAM as

recently as two days prior and began collecting CSAM as soon as his 2016

state sentence concluded. *Id.* He stated that it is an addiction he feels

powerless to stop. *Id.*

## II.    Procedural Background

The defendant pled guilty on May 8, 2025, to a one-count

Superseding Information charging him with importation of obscene

matters in violation of 18 U.S.C. § 1462(b). *Id.* ¶¶ 5-6. Pursuant to the plea

agreement, the parties agreed to the following Sentencing Guidelines

stipulations:

a.   The cross-reference listed in U.S.S.G. § 2G3.1(c)(1) applies in this case. The parties thus agree that the applicable guideline section is U.S.S.G. § 2G.2.2.

b.   The base offense level is 18, pursuant to U.S.S.G. § 2G.2.2(a)(1).

c.   The offense level is increased by two because the material involved a prepubescent minor, pursuant to U.S.S.G. § 2G.2.2(b)(2).

d.   The offense level is increased by four because the material involved the sexual exploitation of an infant or toddler, pursuant to U.S.S.G. § 2G.2.2(b)(4).

e.   The offense level is increased by two because the material involved the use of a computer, pursuant to U.S.S.G. § 2G.2.2(b)(6).

f.   The offense level is increased by five because the material involved at least 600 images, pursuant to U.S.S.G. § 2G.2.2(b)(7)(D).

g.   The offense level is reduced by three for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.

The United States Probation Office disagreed with the above only in that it determined that base offense level was 22, rather than 18, pursuant

5

to U.S.S.G. § 2G2.2(a)(2), and that a two-level reduction was warranted because the defendant's conduct was limited to receipt and the defendant did not intend to traffic in or distribute the material, pursuant to U.S.S.G. § 2G2.2(b)(1).  PSR at ¶¶ 49, 50.  Agreeing with all the remaining stipulations of the parties, the Probation Office arrived at a total offense level of 30, which, with a Criminal History Category of I, corresponds to a Sentencing Guidelines range of 97-121 months. *Id.* at ¶¶ 61, 76, 115.  However, because the statutory maximum sentence for the offense is 60 months, that becomes the effective Guidelines range. *Id.* ¶ 115.

The defendant agreed in the Plea Agreement not to seek a sentence of less than 60 months' incarceration.  *See* Plea Agreement, ¶ 7; PSR ¶ 11.

Therefore, the parties are effectively jointly recommending a sentence of 60 months' incarceration.

### III.  **Sentencing Recommendation**

> **a.** The nature and circumstances of the offense support the government's recommended sentence.

The nature and circumstances of the defendant's conduct were severe. 18 U.S.C. § 3553(a)(1). As a sex offender who was previously convicted at the young age of 20 for possessing child pornography, the defendant could not control himself and went searching for more. When agents got to him,

6

his collection was on his cell phone, a device he carried around on his person, affording him immediate access. That phone had only been purchased six weeks earlier, yet it contained 336 images and 18 videos, including 104 series of victims identified by law enforcement – children whose lives have been upended by being sexually abused, photographed during that horrific experience, and then subjected to having those photographs replicated on the internet and downloaded over, and over, and over again for the sexual gratification of people like the defendant. The defendant also said that he took his old phone, smashed it, and threw it into a river; it is unclear whether this was a desperate attempt to thwart his own impulses – which clearly failed – or a misguided effort to destroy evidence. In any event, the surviving collection contains graphic depictions of some of the most disturbing CSAM material available online, including the sexual abuse of infants and the sadistic sexual torture of young children. While he received only a probationary sentence for his first offense, the defendant should now serve a significant term of incarceration to address the serious nature of this repeat offense.

The government also requests a lifetime term of supervised release with electronic monitoring of the defendant's devices to reduce the likelihood of recidivism.

**b.** <u>The government's recommended sentence properly takes into account the defendant's personal history and characteristics.</u>

The defendant's history and characteristics counsel in favor of a 60-month sentence. 18 U.S.C. § 3553(a)(1). The defendant stated that this problem with images of child sexual abuse material began when he was a freshman in high school. PSR ¶ 64. He is now 30 years old, and it has not abated; indeed, it appears to have escalated. The defendant describes being an only child and the tension in the family home brought about by his father's debilitating injuries due to a life-threatening car accident and the need for his mother to care for his father. *Id.* ¶¶ 81-83. Unsurprisingly given these serious events, the defendant reports experiencing depression as a teenager that went untreated until his 2016 child pornography arrest. *Id.* ¶ 97. The defendant's mother was diagnosed with colon cancer in 2018 and ultimately passed away in 2020, which likely only amplified his depression. *Id.* ¶ 89. Yet countless people are depressed and do not turn to CSAM. The root of the defendant's impulses must be addressed, hopefully with mental health treatment during his term of incarceration.

The defendant's employment experience is as a stone mason. *Id.* ¶¶ 104-06. Thus, he does have a useful skill that would allow him to be gainfully employed following incarceration.

c. <u>A 60-month sentence reflects the seriousness of the offense, promotes respect for the law, provides just punishment, and afford adequate deterrence counsels in favor of a significant sentence.</u>

The offense is a serious one which has a significant impact on the children depicted, as reflected in the victim impact statements submitted to the Court. *Id.* ¶¶ 35-42. These victims speak of how they are continuously haunted knowing that the images of the most tortured moments of their lives will be circulating on the internet forever and there is nothing they can do to stop it. *Id.* The sentence must provide adequate punishment for the victimization of these individuals. In addition, the sentence must be sufficient to deter the defendant specifically, and to deter others who would engage in the crime of downloading and possessing CSAM. 18 U.S.C. § 3553(2)(A), (B).

d. <u>A 60-month sentence will protect the public from further crimes of the defendant.</u>

The defendant clearly poses a danger to the public as he succumbs to impulses he cannot control and continues to seek CSAM despite its devastating effects on the victims depicted. The market for CSAM drives the continued abuse of victims, as consumers like the defendant continue to seek new and different material. He also has admitted that he masturbates to images of children for his own sexual gratification. *Id.* ¶ 72. The public

must be protected from the defendant and his sexual interest in children. 18 U.S.C. § 3553(2)(C).

    e. <u>The recommended sentence will provide the defendant with needed medical or other correctional treatment.</u>

The defendant indicated that he first began reviewing child sexual abuse material when he was a freshman in high school. PSR ¶ 72. He is now 30 years old. By his own admission, this an impulse he cannot control. The recommended sentence is required for the defendant to reflect upon the triggers for this behavior and, ideally, obtain mental health treatment and coping strategies for this addiction.

## IV.  Restitution

Title 18, United States Code, Sections 2259(a) and (b)(4) mandate restitution for losses suffered by victims of child sexual exploitation, in an amount that is at least $3,000. Under § 2259, restitution covers "the full amount of the victim's losses." § 2259(b)(1), (3). Significantly, a court may not decline to order restitution because of the defendant's economic circumstances or "the fact that the victim has, or is entitled to, receive compensation" from another source. § 2259(b)(4)(B).

The Government bears the burden of demonstrating, by a preponderance of the evidence, "the amount of the loss sustained by a

victim as a result of the offense." 18 U.S.C. § 3664(e); *United States v. Graham*, 72 F.3d 352, 356 (3d Cir.1995). A restitution order is reviewed for abuse of discretion. *Graham*, 72 F.3d at 355. As the Third Circuit has noted, "the Federal Rules of Evidence do not apply in sentencing proceedings," *United States v. Campbell*, 295 F.3d 398, 406 (3d Cir.2002), but "information relied upon at sentencing must have 'sufficient indicia of reliability to support its probable accuracy,'" *United States v. Berry*, 553 F.3d 273, 280 (3d Cir.2009).  In addition, "the Confrontation Clause does not apply in the sentencing context and does not prevent the introduction of hearsay testimony at a sentencing hearing." *United States v. Robinson*, 482 F.3d 244, 246 (3d Cir.2007); *see also United States v. Brown*, 534 F. App'x 132, 137–38 (3d Cir.2013).

In this case, eight victims have petitioned for restitution. PSR at ¶ 35. The supporting documentation is quite voluminous and was provided to counsel separately from this sentencing memorandum. The parties will continue to negotiate in an effort reach a resolution prior to the sentencing hearing and will advise the Court in advance of the sentencing hearing.

## V.    Conclusion

For the reasons set forth above, the government respectfully requests a sentence of 60 months' incarceration, lifetime supervised release, and restitution in an amount to be determined by the Court.

Respectfully submitted,

JULIANNE E. MURRAY
United States Attorney

*/s/ Michelle L. Morgan*
Michelle L. Morgan
Assistant United States Attorney

Dated: August 28, 2025