## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 1:24-cr-108-GBW |
| | : | |
| BRANDON JONES, | : | |
| Defendant. | : | |

## GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM TO ADDRESS RESTITUTION

Restitution is statutorily mandated for victims of child sexual abuse and exploitation.  Eight victims of the defendant Brandon Jones's crimes have petitioned for a total of $55,000 in restitution in this case. Based on the supporting documentation and the circumstances of the crimes committed by the defendant, the parties have agreed to restitution in the amount of **$25,500** to be paid by the defendant and will request that the Court incorporate that amount as part of the defendant's sentence.

### I.  **Restitution Requests**

The defendant stands before this Court having pled guilty on May 8, 2025, to a one-count Superseding Information charging him with importation of obscene matters in violation of 18 U.S.C. § 1462(b). The

1

defendant, a previously-convicted sex offender, possessed a cellular phone for a mere six weeks yet amassed 336 image files and 18 video files of child sexual abuse material (CSAM).

The National Center for Missing and Exploited Children (NCMEC) identified 104 series in the defendant's collection that depict children who have been identified as victims of child sexual abuse. Of those children, eight victims have made a request for restitution:

- Victim April in Aprilblonde series, in an amount of minimum $10,000

- Victim Cara in Motorcouch1 series, in an amount of minimum $7,500

- Victim Jesse in Surfer Hair series, in an amount of minimum of $5,000

- Victim John Doe IV in 8Kids4 series, in an amount of minimum of $5,000

- Victim John Doe V in 8Kids5 series, in an amount of minimum of $5,000

- Victim Pia in Sweet White Sugar series, in an amount of minimum of $7,500

- Victim Sloane in Tara series, in an amount of minimum of $10,000

- Victim SV in Sparkling Velvet series, in an amount of minimum of $5,000

Attached as Exhibit A is a summary chart that lists the child victims (by pseudonym), the number of images or videos possessed by the defendant (in parentheses), the amount of restitution to be paid to each victim, and the persons to whom the amounts are to made payable[1]. Based on the defendant's role as a trafficker of their images, the parties have negotiated an agreement as to the individual and total amounts of restitution. The government is providing under seal Exhibits B-1 through B-8 representing the supporting materials for restitution for each of the victims.

## II.    Legal Argument

### a. <u>Restitution is Mandatory</u>

Title 18, United States Code, Sections 2259(a) and (b)(4) mandate restitution for losses suffered by victims of child sexual exploitation. Under § 2259, restitution covers "the full amount of the victim's losses." 18 U.S.C.

---

[1] The chart was previously provided to defense counsel and the Probation Office, but is now also filed as Exhibit A to this memorandum.

§ 2259(b)(1), (3). The "full amount" is defined as including "any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim…..including (A) medical services relating to physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) reasonable attorney's fees, as well as other costs incurred; and (F) any other relevant losses incurred by the victim." 18 U.S.C. § 2259(c)(2).

Further, Section 2259(b)(4) makes it clear that the order of restitution is mandatory, and that the Court may not decline to issue an order based on the economic circumstances of the defendant or whether or not the victim has received or is entitled to receive compensation from "any other source."

The relevant provisions of Section 2259 are as follows:

> (a) In general.—Notwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalty authorized by law, the court shall order restitution for any offense under this chapter.

> (b) Scope and nature of order.—

> (1) Directions.—Except as provided in paragraph (2), the order of restitution under this section shall direct the defendant to

pay the victim (through the appropriate court mechanism) the full amount of the victim's losses.

*****

(c) Definitions.—

*****

(2) Full amount of the victim's losses.- For purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred, or are reasonably expected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim, ....... including —

(A) medical services relating to physical, psychiatric, or psychological care;
(B) physical and occupational therapy or rehabilitation;
(C) necessary transportation, temporary housing, and child care expenses;
(D) lost income;
(E) reasonable attorneys' fees, as well as other costs incurred; and
(F) any other relevant losses incurred by the victim.

(3) Trafficking in child pornography. – For purposes of this section and section 2259A, the term "trafficking in child pornography" means conduct proscribed by section 2251(d), 2252, 2252A(a)(1) through (a)(5), or 2260(b).

## b. <u>Standard of Proof</u>

The Government bears the burden of demonstrating, by a preponderance of the evidence, "the amount of the loss sustained by a victim as a result of the offense." 18 U.S.C. § 3664(e); *United States v. Graham*, 72 F.3d 352, 356 (3d Cir. 1995). A restitution order is reviewed for

abuse of discretion. *Graham*, 72 F.3d at 355. As the Third Circuit has noted, "the Federal Rules of Evidence do not apply in sentencing proceedings," *United States v. Campbell*, 295 F.3d 398, 406 (3d Cir.2002), but "information relied upon at sentencing must have 'sufficient indicia of reliability to support its probable accuracy,' " *United States v. Berry*, 553 F.3d 273, 280 (3d Cir. 2009). In addition, "the Confrontation Clause does not apply in the sentencing context and does not prevent the introduction of hearsay testimony at a sentencing hearing." *United States v. Robinson*, 482 F.3d 244, 246 (3d Cir. 2007); *see also United States v. Brown*, 534 F. App'x 132, 137–38 (3d Cir. 2013).

### c. <u>Factors to be Considered in Determining Restitution</u>

In *Paroline v. United States*, the Supreme Court laid out the considerations necessary to determine restitution awards in child pornography cases. 572 U.S. 434, 134 S.Ct. 1710, 188 L.Ed.2d 714 (2014). The Court stated: "At a general level of abstraction, a court must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses." *Id.* at 459, 134 S.Ct. 1710. The assessment does not require a "precise mathematical inquiry," and involves the use of "discretion and sound judgment." *Id.* The Court listed "a variety of factors district courts

might consider in determining a proper amount of restitution," noting that

"it is neither necessary nor appropriate to prescribe a precise algorithm for

determining the proper restitution amount at this point in the law's

development." *Id.* at 459-60, 134 S.Ct. 1710.

The list of factors is neither mandatory nor exhaustive, but "could

include" the following:

> a. The number of past criminal defendants found to have
>    contributed to the victim's general losses;
> b. reasonable predictions of the number of future
>    offenders likely to be caught and convicted for crimes
>    contributing to the victim's general losses;
> c. any available and reasonably reliable estimate of the
>    broader number of offenders involved (most of whom
>    will, of course, never be caught or convicted);
> d. whether the defendant reproduced or distributed
>    images of the victim;
> e. whether the defendant had any connection to the
>    initial production of the images;
> f. how many images of the victim the defendant
>    possessed;
> g. any other facts relevant to the defendant's relative
>    causal role.

*Id.*

The Court specifically admonished that these factors "need not be

converted into a rigid formula, especially if doing so would result in trivial

restitution orders." *Id.*; *United States v. Beckmann*, 786 F.3d 672, 683 (8th

Cir. 2015); *United States v. Jimenez*, 692 F. App'x 192, 201-02 (5th Cir.

2017) (not precedential). Indeed, circuit courts subsequent to *Paroline* have

found the decision does not require the district courts to consider and make factual findings on every single factor mentioned in the case. *See, e.g., United States v. Sainz*, 827 F.3d 602, 606 (7th Cir. 2016); *United States v. Halverson*, 897 F.3d 645, 654 (5th Cir. 2018). And even if the ultimate apportionment is not scientifically precise, "precision is neither expected nor required." *United States v. Galan*, 804 F.3d 1287, 1291 (9th Cir. 2015). Recognizing difficulties in this assessment, the Supreme Court instructed lower courts to "'do their best' in exercising their 'discretion and sound judgment.'" *United States v. Reynolds*, 626 F. App'x 610, 620 (6th Cir. 2015) (not precedential) (quoting *Paroline*).

Classifying possession of child pornography cases in a "special context," the *Paroline* Court directed that a district court applying Section 2259 should "order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Id.* at 459-60, 134 S.Ct. 1710. The amount in a case like *Paroline,* in which the possessor was one of thousands of offenders, should be neither severe nor nominal; rather, the restitution should be a "reasonable and circumscribed award imposed in recognition of the indisputable role of the offender in the causal process underlying the victim's losses and suited to the relative size of that causal role." *Id.*

In *United States v. Sanders*, the *Paroline* factors were examined in a contested restitution claim for a defendant who was convicted of receiving and possessing child pornography – similar to the crimes committed here. *See* 2018 WL 10015628 (August 27, 2018, E.D.Pa.). In that case, defendant downloaded and maintained a collection of images and videos of child pornography over an extended period of years. In support of the claims for restitution, the victims provided documentation detailing the harm caused by the original abuse, and also the continuing harm caused by offenders who download and maintain collections of the images displaying their horrific sexual abuse. In examining each of the *Paroline* factors, the district court discussed at length the need to disaggregate the harms caused by the original sexual abuse from Sanders' crimes of conviction, and awarded restitution in the amount of $98,972, which represented approximately one-third of the total requested amount for his 22 victims. *Id.* *1, 3-5. The Third Circuit affirmed this award, finding that the district court explicitly considered all of the *Paroline* factors, including the factor of "whether the defendant had any connection to the initial production of the images," and noted that the consideration of this factor accounts for the disaggregation of the harm caused by the initial abuse from the harm of later possession. *United States v. Sanders*, 834 Fed.Appx. 742 (3d Cir. 2019) (non-

precedential); *See also United States v. Restitullo*, 796 F. App'x 76, 84 (3d Cir. 2019) (non-precedential) (affirming restitution order of $162,000 to 18 victims, finding that the court properly considered *Paroline* factors and a $9,000 payment per victim was not excessive).

In determining the type of losses that are considered to have been "proximately caused" by the defendant's sexual exploitation crimes, courts have recognized the victims' costs of treatment and lost income resulting from the trauma of knowing that the images of their abuse are being viewed over and over again, the creation of a market for these images, the invasion of the victims' privacy, and the damage to their psychological well-being. *Paroline*, 572 U.S. at 449, 134 S.Ct. 1710; *United States v. Olivieri*, 2012 WL 1118763, at *4 (D.N.J. 2012); *Crandon*, 173 F.3d at 126; 18 U.S.C. § 2259(b)(3)(A) through (F).

Here, the Government provided documentation which details the precise loss for the eight child victims who seek restitution from the defendant in this case in Exhibits B-1 through B-8. The Government confirmed that each child was depicted in the defendant's collection of child pornography through the NCMEC report of identified victims, and by having the agent review the actual images and confirm each child. The government also confirmed (and included in the summary chart) with the

Department of Justice's Child Exploitation and Obscenity Section ("CEOS")
and each child's attorney the total amount of restitution that has been
ordered for defendants who have been convicted of offenses involving these
children across the United States, and the amount of restitution actually
collected by each child.  *See* Exhibit A. Lastly, the Government provided
documentation regarding the defendant's causal role in their harm:  the
number of images of each child found in his collection. *Id.* This information
supports the amounts sought by each child as a result of the defendant
crimes against them.

### d.    Harm Caused to the Victims by Defendant's Crimes

The Supreme Court and the Third Circuit have consistently
recognized that children are harmed by the trafficking and possession of
images depicting their sexual abuse.  *See Ashcroft v. Free Speech Coalition*,
535 U.S. 234, 249 (2002) ("as a permanent record of a child's abuse, the
continued circulation itself would harm the child"); *United States v. Goff*,
501 F.3d 250, 259 (3d Cir. 2007) (citing Child Pornography Prevention Act
of 1996, 18 U.S.C. § 2251) ("Congress finds that … where children are used
in its production, child pornography permanently records the victim's
abuse, and its continued existence causes the child victims of sexual abuse
continuing harm by haunting those children in future years."). The

continued trading of the images of the victims' abuse compounds and exacerbates the harm of the initial sexual abuse. *New York v. Ferber*, 458 U.S. 747, 759 n. 10 (1982) ("The victim's knowledge of publication of the visual material increases the emotional and psychic harm suffered by the child."). Indeed, the Supreme Court has classified the harm to these victims as "extensive" because child pornography is a "permanent record" of the sexual abuse suffered by these children. *Id*. at 759. In addition to these psychological harms, each viewing of these images violates the victim's privacy. "Like a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being." *Free Speech Coalition*, 535 U.S. at 249.

Congress, the Supreme Court, and the Third Circuit agree that possession of child pornography creates a distinct and direct emotional harm to children whose abuse is portrayed in it. *See e.g. Ferber*, 458 U.S. at 759 n. 10; *Goff,* 501 F.3d at 259. Victims of child pornography offenses do and are expected to suffer the after-effects of these crimes long into the future, which often requires long term psychiatric care:

> "The use of children as subjects of pornographic materials is harmful to the physiological, emotional and mental health of the child....Children used in pornography are desensitized and conditioned to respond as sexual objects....They must deal with the permanency, longevity, and circulation of such record of their sexual abuse.....Pornography poses an even greater threat to the child victim

than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place."

Child Pornography Prevention Act of 1995, S.Rep. No. 104–358, at 14 (1996) (quoting *New York v. Ferber*, 458 U.S. at 756–60 (1982)); *Goff*, 501 F.3d at 259. To account for the fact that "children victimized by sexual abuse often do not recover quickly from their injuries," courts have held that § 2259 permits an award for future medical expenses. *See United States v. Jacobs*, 609 Fed.Appx. 83, 87 (3d Cir. 2015) (cert.den. 2018) (ordering $75,000 restitution for one victim's current and future mental health costs caused by defendant's crime of receipt of child pornography), citing to *United States v. Laney*, 189 F.3d 954, 966 (9th Cir.1999), *United States v. Pearson*, 570 F.3d 480, 487 (2d Cir.2009) (recognizing restitution under § 2259 should be provided for costs of future counseling in case involving possession and receipt of child pornography), and *United States v. Danser*, 270 F.3d 451, 455 (7th Cir.2001).

The continued circulation of child pornography over the Internet has long been recognized by the Supreme Court, the Third Circuit, and the district courts in this circuit, as proximately causing harm to the child victims.  See *Paroline*, 134 S.Ct. at 1722; *Ashcroft*, 535 U.S. at 239; *Goff*, 501 F.3d at 259; *Jacobs*, 609 Fed.Appx. at 87, and 2014 WL 4182338 at *1;

13

*Olivieri* 2012 WL 1118763 at *10; *United States v. Hardy*, 707 F.Supp.2d 597, 614 (W.D. Pa. 2010); *United States v. Barkley*, 2011 WL 839541, at *5 (M.D. 2011).

In the Third Circuit, "a showing of 'proximate cause' for purposes of restitution under § 2259 requires only that a defendant's conduct be a 'substantial factor' in the victim's losses." *United States v. Hardy*, 707 F.Supp.2d 597, 611 (W.D. Pa. 2010); *See also United States v. Crandon,* 173 F.3d 122, 125 (3d Cir.1999); *United States v. Barkley*, 2011 WL 839541, at *4 (M.D. 2011) (Section 2259 requires a "causal connection" between the victim's harm and the defendant's crimes); *United States v. Covert,* Crim. No. 09–332, 2011 WL 134060, at *5 (W.D.Pa. 2011). The "substantial factor" test allows for restitution in cases of "concurrent cause," where multiple defendants commit an act, which on its own would be sufficient to bring about the harm.  *Hardy*, 707 F.Supp.2d at 612-14 (finding defendant's distribution and possession of images of victim Amy was a "substantial factor" in the harm suffered by her:  "It is undoubtedly true that harmful images of Amy would be circulating on the internet even if it were not for the conduct of Defendant. But, in this Court's estimation, Amy has shown by a preponderance of the evidence that Defendant's conduct aided in the circulation of said images, that the circulation has harmed her,

and that, therefore, Defendant's conduct caused at least part of her overall harm. She has, therefore, shown that Defendant's conduct is a substantial factor in her psychological harm and economic losses.") In *Hardy*, the defendant was convicted of distributing, receiving, and possessing child pornography. *Id*. at 599. The victim was sexually abused as a child and had received psychological therapy as a result of her initial abuse. *Id*. at 600. After showing signs of improvement, the victim received information that her images had been disseminated amongst countless sexual predators on the internet, which caused her to suffer severe emotional distress due to the fear of being recognized. *Id*. The court held that the defendant's conduct was a substantial factor in her psychological harm and economic losses, finding that the "[d]efendant's conduct aided in the circulation of said images, that the circulation has harmed her . . . therefore, [d]efendant's conduct caused at least part of her overall harm." *Id*.

Similarly, in *Barkley*, the district court concluded the defendant's possession of images of Amy, in violation of 18 U.S.C. § 2252A(a)(5)(B), was a "substantial factor" in the harm suffered by her. *Barkley*, 2011 WL 839541 at *5. The court noted that the defendant's "possession of the images clearly exacerbates the harm to [the victim], and facilitates the market for the continued production, distribution, and possession of such

15

images." *Id.* Thus, the court held that the victim's injuries were caused to some extent by the defendant and restitution was mandatory. *Id.*

The continued circulation of child pornography over the Internet has long been recognized by the Supreme Court, the Third Circuit, and the district courts in this circuit, as proximately causing harm to the child victims. See *Paroline*, 134 S.Ct. at 1722; *Ashcroft*, 535 U.S. at 239; *Goff*, 501 F.3d at 259; *Jacobs*, 609 Fed.Appx. at 87, and 2014 WL 4182338 at *1; *Olivieri* 2012 WL 1118763 at *10; *Hardy*, 707 F.Supp.2d at 614; *Barkley*, 2011 WL 839541 at *5. The children are notified every time even one of their images is found, exacerbating their mental suffering and ensuring that they will never be free from the pain caused by their sexual abuse and by the circulation over the Internet.

The harm attributable to this defendant is established through his download of the images and videos of the eight identified victims within the collection that he amassed in just six weeks. The mental anguish suffered by these children is compounded by the life-long struggles they face as a result of their sexual abuse and their continued victimization by defendants like Brandon Jones. Each defendant who collects images of their sexual abuse and possessed these images was a substantial factor in their aggregate loss. Child victims seeking restitution very often require therapy

16

throughout their adult lives. Many suffer from a pervasive feeling of helplessness, shame, and humiliation due to people like the defendant viewing and re-distributing their images to other child sex offenders. Their psychological distress includes the fear of being recognized. Some of them detail how users who downloaded their images stalked and harassed them, well into adulthood.

The defendant caused at least *part* of the overall harm for each of these victims, and accordingly, should be found to have been a "substantial factor" in causing their losses.  Restitution in the amount of **$25,500** sought from and agreed to by this defendant is warranted and should be ordered.

Respectfully submitted,

JULIANNE E. MURRAY
United States Attorney

*/s/ Michelle L. Morgan*
Michelle L. Morgan
Assistant United States Attorney

Dated: September 3, 2025

17